TINA WOLFSON (SBN 174806)
twolfson@ahdootwolfson.com
ROBERT R. AHDOOT (SBN 172098)
rahdoot@ahdootwolfson.com
CHRISTOPHER STINER (SBN 276033)
cstiner@ahdootwolfson.com
DEBORAH DE VILLA (SBN 312564)
ddevilla@ahdootwolfson.com
**AHDOOT & WOLFSON, P.C.**
2600 W. Olive Avenue, Suite 500
Burbank, California 91505-4521
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SCRIBER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br>FORD MOTOR COMPANY,<br><br>Defendant. | Case No. **'22CV1716 MMA MDD**<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Michael Scriber ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to him and on information and belief as to all other matters, by and through undersigned counsel, hereby brings this Class Action Complaint against Defendant Ford Motor Company (collectively, "Defendant" or "Ford").

## NATURE OF THE ACTION

1. Plaintiff brings this action on behalf of himself and on behalf of all similarly situated persons ("Class Members") in the United States who purchased or leased any of the following Ford and Lincoln branded vehicles which were manufactured with a 3G modem, an obsolete piece of telematics equipment for the indicated model years: Fusion Energi model years 2014-2020, C-MAX Energi model years 2014-2017, Focus Battery Electric Vehicle (BEV) model years 2016-2018, MKZ / MKZ Hybrid model years 2016-2017, MKC model years 2015-2017, Continental model year 2017, and MKX model years 2016-2017 (the "Class Vehicles").

2. This action is brought to remedy violations of law in connection with Defendant's manufacture, marketing, advertising, selling, warranting, and servicing of the Class Vehicles. The Class Vehicles' internet enabled features, such as roadside emergency safety features and other features available through the MyFord or MyLincoln Mobile App, were rendered inoperable after AT&T's 3G phase out in 2022 due to Ford's installation of obsolete telematics equipment in the Class Vehicles. The allegations herein are based on personal knowledge as to Plaintiff's own experiences and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d), because this matter was brought as a class action under Fed. R. Civ. P. 23, at least one proposed Class member is of diverse citizenship from Defendant, the proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000), excluding interest and costs.

4. The Court has personal jurisdiction over Defendant and venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District. Plaintiff Michael Scriber resides in this District and purchased his Class Vehicle in this District. Ford has marketed, advertised, sold, and leased Class Vehicles within this District.

**PARTIES**

5. Plaintiff Michael Scriber is an adult citizen of Alpine, California. On or about August 30, 2020, Plaintiff purchased a new 2020 Ford Fusion Energi, a plug-in hybrid, from El Cajon Ford, an authorized Ford dealership in El Cajon, California. Plaintiff's vehicle is covered by a 3 year/36,000 mile New Vehicle Limited Warranty.

6. Ford's warranty manual for the vehicle makes no mention of the fact that Ford installed an inferior 3G modem in the vehicle. At the time of his vehicle purchase, Plaintiff was not informed by Ford that the modem in his vehicle was a 3G modem. The 3G modem was not disclosed by Ford's authorized dealership, on the vehicle's window sticker, or elsewhere at the time Plaintiff purchased the vehicle.

7. In or around June 2022, Plaintiff noticed that his MyFord Mobile App was not working. He was unable to remote start his vehicle, check whether his vehicle was charging, or schedule when his plugged-in vehicle charged. Shortly thereafter he called Ford to determine what the issue was. Ford informed him that his vehicle's modem was no longer functional and directed him to take his vehicle to an authorized dealer to address the problem. Ford also informed him that the anti-theft system installed in his vehicle that allowed him to identify his vehicle's location in case of theft would no longer function. Plaintiff's insurance carrier provides him a premium discount for a functional vehicle anti-theft system which Plaintiff will lose if the anti-theft system is non-functional.

8. On July 11, 2022, Plaintiff brought his vehicle to the Service Center at El Cajon Ford. His car had 12,009 miles on it. After this initial visit Plaintiff left his vehicle with El Cajon Ford to determine what, if anything, could be done to address the problem with his vehicle's modem. El Cajon Ford's Service Center examined the modem and

investigated the issue further. After many weeks and several dozen phone calls, El Cajon Ford's Service Center determined that Plaintiff's vehicle had a 3G rather than a 4G modem installed. They further informed him that Ford offered a 4G modem upgrade kit, however Ford did not consider it a repair covered by the warranty. They estimated that the upgrade kit costs $458.69 and labor involved would cost $558.48.

9. On October 14, 2022, Plaintiff sent a letter to Ford demanding that they honor the replacement of his non-functional 3G modem with a functional 4G modem as an authorized repair under the New Vehicle Warranty. Ford did not offer to repair or replace his modem, or otherwise resolve the problems with Plaintiff's vehicle.

10. Defendant Ford Motor Company is a Delaware limited liability company with its principal place of business located in Dearborn, Michigan. Defendant designed, manufactured, marketed, distributed, leased, and sold, through its authorized dealers and distributors, the Class Vehicles in the United States to Plaintiff and the other Class members.

## FACTUAL BACKGROUND

11. A Class Vehicle's Mobile App uses the vehicle's onboard wireless module, or modem, to communicate with the secure Ford cloud service through cellular technology. The Mobile App allows you to start, lock, unlock, and locate the vehicle remotely. The Mobile App also connects you with other vehicle resources like a parking locator, roadside assistance, dealer locations and Ford Support. In recognition of the importance of the theft and safety features, insurance carriers offer vehicle owners preferential rates for vehicles with those features.

12. For plug-in hybrids, the Mobile App allows the owner to check the vehicle's battery charge level and total range, and to schedule the time of day the vehicle charges its battery in order to take advantage of when electricity prices are at their lowest.

13. Ford contracted with AT&T to provide access to its 3G network for the modems installed in the Class Vehicles. As mobile carriers seek to upgrade their networks to use the latest technologies, they periodically shut down older outdated services, such as

3G, to free up spectrum and infrastructure to support new services, such as 5G. Similar transitions have happened before. For example, some mobile carriers shut down their 2G networks when they upgraded their networks to support 4G services. Mobile carriers have the flexibility to choose the types of technologies and services they deploy, including when they decommission older services in favor of newer services to meet consumer demands.

14.     AT&T first introduced 3G in 2006-2007. This was followed by the launch of its 4G LTE service on September 18, 2011. Then, in February 2019, AT&T publicly announced a plan to sunset their 3G wireless network in order to make way for its deployment of its 5G network.

15.     Despite the inevitability of AT&T's decommissioning of its 3G network, and the public announcement of the timetable in February 2019, Ford continued to manufacture the Class Vehicles with a 3G modem. Accordingly, Ford knew or should have known when it manufactured each of the Class Vehicles that AT&T would decommission its 3G network before the end of the usable life of the Class Vehicle and/or while the Class Vehicles were still under warranty.

16.     From 2014 to the present the only vehicles that Ford manufactured with a 3G modem were the Class Vehicles. All other vehicles were manufactured with 4G modems which remain operational today.

17.     In November 2021, Ford initiated for a limited time Customer Satisfaction Program 21B09 instructing Ford and Lincoln dealers to provide a 4G modem upgrade to Class Vehicles. Per the Customer Satisfaction Program, owners within the "complimentary trial period" of their Mobile App could purchase the 4G modem upgrade kit and Ford would cover costs for labor/installation. Owners outside the complimentary trial period of their Mobile App have the option to pay for both the 4G modem upgrade kit and the labor/installation costs. The Customer Satisfaction Program is no longer available to owners of Class Vehicles, regardless of whether they are still within the "complimentary trial period" of their Mobil App. In fact, the Customer Satisfaction Program expired May

31, 2022, meaning Ford would cover no cost associated with the 4G upgrade initiated after that date.

18. Ford refused to make the 4G upgrade kit installation as a warranty repair or otherwise cover all costs associated with the repair of the 3G modem. As a result of Ford's misconduct, Plaintiff and the other Class members were each injured on account of receiving Class Vehicles that were fundamentally different from what they believed they were purchasing, less valuable than was represented, and less valuable than what they actually received.

19. To date, Plaintiff and Class members have not obtained an adequate repair for the non-functional 3G modem, and they do not know whether Defendant is capable of providing a repair for the non-functional 3G modem beyond its replacement with a 4G modem as described above. As such, and without the benefit of discovery, it is for all practical purposes impossible to know at this time whether a remedy at law or in equity will provide the appropriate full relief for Plaintiffs and members of the Class. As a result, Plaintiff, at this stage of the litigation, seeks both restitution and a remedy at law, where the claims so permit. Further, Plaintiff seeks an injunction enjoining Defendant and its agents, servants, and employees, and all persons acting under, in concert with, or for it from selling Class Vehicles without notice that they have a non-functional 3G modem which must be replaced with a functional 4G modem.

## TOLLING OF STATUTES OF LIMITATIONS

20. Defendant had exclusive knowledge of the defective nature of the Class Vehicles' 3G modems, i.e. that they would cease operating when AT&T's 3G network was decommissioned, and knew the defective nature would not be discovered by Plaintiff and Class Members unless and until the defect manifested. Only Defendant had access to information about the defect, through internal pre-sale testing procedures customarily conducted by Ford, communications with AT&T regarding the eventual decommissioning of its 3G network, and Ford's general knowledge of the telecommunications industry's upgrade to 4G and 5G technology.

21. Since the defect could not be detected until it manifested itself when the AT&T network was decommissioned, Plaintiff and Class Members exercising due diligence were not reasonably able to discover the defect until after purchasing the Class Vehicles. Plaintiff and Class Members could not reasonably have been expected to learn of or discover Defendant's omissions of material information concerning the Class Vehicles until after manifestation of the Defect and only then because they would be forced to research what had happened to their Vehicles. Therefore, the discovery rule applies to all claims asserted by Plaintiff and Class Members.

22. Defendant has known about the defect since at least 2019 when AT&T made its announcement of the decommissioning of its 3G network, if not earlier, and has failed to alert Class Members to the defect.

23. Thus, any applicable statute of limitations has been tolled by Defendant's actions and Defendant is estopped from pleading the statute of limitations because it failed to disclose facts it was obligated to disclose concerning the defect.

## CLASS ALLEGATIONS

24. This action is brought as a class action pursuant to Fed. R. Civ. P. 23(a) (b)(2), and (b)(3) on behalf of a Class defined as follows:

**Class**

All persons and entities in the United States that purchased or leased a Class Vehicle for end use and not for resale.

25. In the alternative, Plaintiff seeks certification of the following class:

**California Class**

All persons and entities in the State of California that purchased or leased a Class Vehicle for end use and not for resale.

26. Excluded from the Class are: (i) Defendant and its officers and directors, agents, affiliates, subsidiaries, authorized distributors and dealers, (ii) all Class members who timely and validly request exclusion from the Class, and (iii) the Judge presiding over

this action.

27. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

28. **Numerosity:** The members of the Class are so numerous that joinder of all Class members in a single proceeding would be impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Ford and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that tens of thousands of Class Vehicles have been sold and leased nationwide.

29. **Existence/Predominance of Common Questions of Fact and Law:** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

 a. whether Ford engaged in the conduct alleged herein;

 b. whether Ford omitted and misrepresented material facts to purchasers and lessees of Class Vehicles;

 c. whether Ford's omissions and misrepresentations regarding the Class Vehicles were likely to mislead a reasonable consumer;

 d. whether Ford breached warranties with Plaintiff and the other Class members when it produced, distributed, and sold the Class Vehicles;

 e. whether Plaintiff's and the other Class members' Class Vehicles were worth less than as represented as a result of the conduct alleged herein;

 f. whether Plaintiff and the other Class members have been damaged and, if so, the extent of such damages; and

 g. whether Plaintiff and the other Class members are entitled to equitable relief, including but not limited to, restitution and injunctive relief.

30. Ford engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other Class members.

Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

31. **Typicality:** Plaintiff's claims are typical of the claims of the other Class members because, among other things, Plaintiff and the other Class members were injured through the substantially uniform misconduct described above. Like Plaintiff, Class members also purchased or leased a Class Vehicle containing the defect. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other Class members, and no defense is available to Ford that is unique to Plaintiff. The same events giving rise to Plaintiff's claims for relief are identical to those giving rise to the claims of all Class members. Plaintiff and all Class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Ford's wrongful conduct in selling/leasing and failing to remedy defective Class Vehicles.

32. **Adequacy:** Plaintiff is an adequate Class representative because he will fairly represent the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions, including consumer fraud and automobile defect class action cases. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class they represent and have the resources to do so. Neither Plaintiff nor his counsel has interests adverse or antagonistic to those of the Class.

33. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Ford, so it would be impracticable for Class members to individually seek redress for Ford's wrongful conduct. Even if Class members could afford individual litigation, the court system should not be required to undertake such an unnecessary burden. Individualized

litigation would also create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

34. Upon information and belief, members of the Class can be readily identified and notified based upon, *inter alia*, the records (including databases, e-mails, dealership records and files, etc.) Ford maintains regarding its sales and leases of Class Vehicles.

## CAUSES OF ACTION
### COUNT I
### Breach of Express Warranty
### (On Behalf of Plaintiff and the Class)

35. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

36. Plaintiff and other Class members formed a contract with Defendant at the time they purchased their Class Vehicles. The terms of the contract include the promises and affirmations of fact and express warranties made by Defendant.

37. Defendant's 2020 New Vehicle Limited Warranty provides that "Ford Motor Company dealers will, without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship."

38. Plaintiff's and the other Class members' Class Vehicles did not perform as promised and contained a defective modem which was nonfunctional after the inevitable decommissioning of AT&T's 3G outdated network.

39. Defendant has actual knowledge that it breached express warranties with Plaintiff and the other Class members related to the Class Vehicles.

40. Defendant breached the terms of the express warranties with Plaintiff and other Class members by not providing the Class Vehicles with properly functioning modems.

41. Plaintiff sought repair of his vehicle during the warranty period and Ford refused to make a repair without payment.

42. As the foreseeable and actual result of Defendant's breach of express warranty, Plaintiff and the other Class members were damaged in an amount that is the difference between the value of the Class Vehicles if they had possessed a modem capable of functioning without AT&T's outdated 3G network and performed as represented and the value of the vehicles they actually received. Plaintiff and the other Class members suffered diminution in the value of the Class Vehicles, out-of-pocket losses related to repairing, maintaining, and servicing their defective Class Vehicles, costs associated with arranging and obtaining alternative means of transportation, and other incidental and consequential damages recoverable under the law.

## COUNT II
### Breach of Implied Warranty of Merchantability
### (On Behalf of Plaintiff and the Class)

43. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

44. Defendant is and was at all relevant times a merchant with respect to the Class Vehicles, and manufactured, distributed, warranted and sold the Class Vehicles.

45. A warranty that the Class Vehicles, and their telematics equipment, were in merchantable condition and fit for the ordinary purposes for which they were sold is implied by law.

46. Plaintiff and the other Class members purchased the Class Vehicles manufactured and sold by Defendant in consumer transactions.

47. The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and the modem was not in merchantable condition and were not fit for the ordinary purpose for which cars with installed telematics equipment are used because the inevitable decommissioning of AT&T's outdated 3G network would render the vehicle modem nonfunctional. The Class Vehicles left Defendant's possession and

control with defective modem that rendered them at all times thereafter unmerchantable and unfit for ordinary use. Plaintiff and the other Class members used their Class Vehicles in the normal and ordinary manner for which Class Vehicles were designed and advertised.

48. Defendant knew before the time of sale to Plaintiff and the other Class members, or earlier, that the Class Vehicles were produced with a defective modem that was unfit for ordinary use. This knowledge was based on Defendant's own knowledge of the decommissioning of AT&T's 3G network its modems relied on, its decision to include an alternate 4G modem in other vehicle models produced around the same time, the industry standard practice of making vehicle features that would not be affected by the 3G network shutdown, and Defendant's general knowledge regarding the manufacture of its vehicle modems and integrated systems and software.

49. Despite Plaintiff's and the other Class members' normal, ordinary, and intended uses, maintenance, and upkeep, the modem of the Class Vehicles experienced and continue to experience the defect and premature failure after AT&T decommissioned its outdated 3G network.

50. Plaintiff's and other Class members' modems and the Class Vehicles are, and at all times were, not of fair or average quality, nor would they pass without objection.

51. All conditions precedent have occurred or been performed.

52. Defendant's warranty disclaimers, exclusions, and limitations, to the extent that they may be argued to apply, were, at the time of sale, and continue to be, unconscionable and unenforceable to disclaim liability for a known, latent defect. Defendant knew when it first made these warranties and their limitations that the defect existed, and the warranties might expire before a reasonable consumer would notice or observe the defect upon AT&T decommissioning its outdated 3G network. Defendant also failed to take necessary actions to adequately disclose or cure the defect after the existence of the defect came to the public's attention and sat on its reasonable opportunity to cure or remedy the defect, its breaches of warranty, and consumers' losses. Under these

- 11 -
CLASS ACTION COMPLAINT

circumstances, it would be futile to enforce any informal resolution procedures or give Defendant any more time to cure the defect or cure its breaches of warranty.

53. Plaintiff and the other Class members suffered and will suffer diminution in the value of their Class Vehicles, out-of-pocket losses related to repairing, maintaining, and servicing their defective Class Vehicles, costs associated with arranging and obtaining alternative means of transportation, and other incidental and consequential damages recoverable under the law.

54. Plaintiff and the other Class members had sufficient direct dealings with Defendant and its agents (dealers) to establish privity of contract between themselves and Defendant. As alleged *supra,* Plaintiff purchased his Class Vehicle from a Ford dealership, an agent of Ford. Plaintiff's Class Vehicle was purchased with a Ford New Vehicle Limited Warranty. Defendant and Plaintiff and the other Class members are in privity because of Ford's New Vehicle Limited Warranty, which Defendant extends to Plaintiff and the other Class members. Privity, nevertheless, is not required in this case because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between Defendant and its dealers; specifically, they are the intended beneficiaries of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles; the warranty agreements were designed for, and intended to benefit, only the ultimate consumers—such as Plaintiff and the other Class members. Indeed, under the terms of the New Vehicle Limited Warranty, the warranty applies if the vehicle "was originally sold or leased by Ford Motor Company or one of its dealers in the United States or U.S. Federalized Territories, and it was originally registered/licensed and operated in the United States, U.S. Federalized Territories, or Canada."

# COUNT III
## Violation of California's Consumers Legal Remedies Act
## Cal. Civ. Code § 1750, *et seq*. ("CLRA")
### (On Behalf of Plaintiff and the California Class)

55. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

56. Defendant is a "person," under Cal. Civ. Code § 1761(c).

57. Plaintiff is a "consumer," as defined by Cal. Civ. Code § 1761(d), who purchased or leased a Class Vehicle.

58. Defendant's conduct, as described herein, in misrepresenting the characteristics, qualities, benefits and capabilities of the Class Vehicles, or omitting material information, violates the CLRA. Specifically, Defendant violated the CLRA by omitting material facts and failing to disclose known defects in its modem, engaging in the following practices proscribed by Civil Code § 1770(a) in transactions that were intended to result in, and did result in, the sale or lease of the Class Vehicles:

- representing that the Class Vehicles have approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;
- representing that the Class Vehicles are of a particular standard, quality, or grade if they are of another;
- advertising the Class Vehicles with intent not to sell them as advertised; and
- representing that the Class Vehicles have been supplied in accordance with previous representations when they have not.

59. Defendant violated the CLRA by selling and leasing Class Vehicles that it knew were equipped with defective modem incapable of performing as advertised, unable to deliver the benefits, qualities, and characteristics described in advertisements and promotional materials because the inevitable decommissioning of AT&T's outdated 3G network would render the vehicle modems nonfunctional. Defendant omitted from Plaintiff and other Class members the material fact that Class Vehicles were sold with this defect in

their modem. This is a fact that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.

60. Defendant knew, at the time it sold Plaintiff his vehicle, of the material fact that the vehicles were equipped with a defective modem in the ways described above, and that the defective modem substantially diminished the quality, performance, safety, and lifespan of Plaintiff's and other Class members' vehicles. Through internal pre-sale testing procedures customarily conducted by Ford, Ford learned of the defect in the Class Vehicles' modem. Defendant's conduct in selling the defective Class Vehicles and omitting information about the defect was fraudulent, wanton, and malicious.

61. Defendant's unfair and deceptive acts or practices were the foreseeable and actual cause of Plaintiff and other Class members suffering actual damage on account of receiving a car that lacked the performance that Defendant represented the vehicles to have and contained defective modems.

62. Plaintiff and the other Class members paid for a car that was supposed to meet certain specifications. When they received a vehicle that did not conform to these specifications, and which fell below the standards set by and described in Ford's representations, Plaintiff and the other Class members were damaged on account of receiving a car worth less than as represented. Plaintiff and the other Class members suffered diminution in the value of Class Vehicles, out-of-pocket losses related to repairing, maintaining, and servicing their defective Class Vehicles, costs associated with arranging and obtaining alternative means of transportation, and other incidental and consequential damages recoverable under the law.

63. Pursuant to § 1782 of the CLRA, on November 3, 2022, Plaintiff notified Defendant in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act.

64. If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the

- 14 -
CLASS ACTION COMPLAINT

date of written notice pursuant to § 1782 of the Act, Plaintiffs will amend this Complaint to add claims for actual, punitive, and statutory damages, as appropriate.

65. Pursuant to § 1780(d) of the Act, attached hereto as **Exhibit A** is the affidavit showing that this action has been commenced in the proper forum.

## COUNT IV
### Violation of California's Unfair Competition Law
### California Business & Professions Code § 17200, *et seq*. ("UCL")
### (On Behalf of Plaintiff and the California Class)

66. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

67. The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising. In the course of conducting business, Defendant committed "unlawful" business practices by, among other things, making the representations and omissions of material facts, as set forth more fully herein, refusing to repair or replace the Class Vehicle's nonoperational 3G modem, and violating Civil Code §§ 1572, 1573, 1709, 1711, 1770(a)(5), (6), (7), (9), and (16), and Business & Professions Code §§ 17200, et seq., 17500, et seq., and the common law.

68. In the course of conducting business, Defendant committed "unfair" business practices by, among other things, misrepresenting and omitting material facts regarding the characteristics, capabilities, and benefits of Class Vehicles. There is no societal benefit from such false and misleading representations and omissions, only harm. While Plaintiff and other Class members were harmed by this conduct, Defendant was unjustly enriched. As a result, Defendant's conduct is "unfair" as it has offended an established public policy. Further, Defendant engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

69. Defendant knew when Class Vehicles were first sold and leased that they were equipped with a defective modem that substantially diminished the quality, performance, and safety and lifespan of the vehicles. Through internal pre-sale testing procedures

customarily conducted by Ford, communications with AT&T regarding the eventual decommissioning of its 3G network, and Ford's general knowledge of the telecommunications industry's upgrade to 4G and 5G technology, before the Class Vehicles were introduced to the market Ford knew of the defect in the Class Vehicles' modem—i.e., that the inevitable decommissioning of AT&T's outdated 3G network would render the vehicle modems nonfunctional.

70. Plaintiff alleges violations of consumer protection, unfair competition, and truth in advertising laws in California, resulting in harm to consumers. Defendant's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers. This conduct constitutes violations of the UCL's "unfair" prong. There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein.

71. The UCL also prohibits any "fraudulent business act or practice." In the course of conducting business, Defendant committed "fraudulent business act[s] or practices" by, among other things, prominently making the representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts regarding the safety, characteristics, and production quality of the Class Vehicles.

72. Defendant's actions, claims, omissions, and misleading statements, as more fully set forth above, were also false, misleading and likely to deceive the consuming public within the meaning of the UCL.

73. Plaintiff was deceived as a result of his reliance on Defendant's material representations and omissions, which are described above. Plaintiff suffered injury in fact and lost money as a result of purchasing a deceptively advertised Class Vehicle by paying more than he should have and expending time, effort, and money to attempt to repair or replace his Class Vehicle's modem and incurring other consequential inconvenience, aggravation, damages, and loss of money and time.

74. Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

75. Plaintiff, on behalf of himself and all others similarly situated, seeks restitution from Defendant of all money obtained from Plaintiff and the other members of the Class collected as a result of unfair competition, an injunction prohibiting Defendant from continuing such practices, corrective advertising, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

## COUNT V
### Fraudulent Omission
**(On Behalf of Plaintiff and the California Class)**

76. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

77. Defendant knew that the Class Vehicles' modems were defective, would fail, and were not suitable for their intended use, and that the Class Vehicles' defect would lead to the failure of key features like the those accessed through the mobile application.

78. Defendant concealed from and failed to disclose to Plaintiff and Class members the defective nature of Class Vehicles' modem.

79. Defendant was under a duty to Plaintiff and Class members to disclose the defective nature of Class Vehicles' modem because:

- Defendant was in a superior position to know the true state of facts about the defect contained in Class Vehicles' modem;
- Defendant made partial disclosures about the quality of Class Vehicles without revealing the defective nature of the modem; and
- Defendant actively concealed the defective nature of the Class Vehicles' modem from Plaintiff and other Class members.

80. The facts concealed or not disclosed by Defendant to Plaintiff and the other Class members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendant's Class Vehicles or pay a

lesser price for them. Had Plaintiff and Class members known about the defective nature of Class Vehicles' modem, they would not have purchased or leased Class Vehicles, or would have paid less for them.

81. Defendant concealed or failed to disclose the true nature of the design or manufacturing defects contained in Class Vehicles' modem in order to induce Plaintiff and Class members to purchase or lease Class Vehicles. Plaintiff and the other Class members justifiably relied on Defendant's omissions to their detriment. This detriment is evident from Plaintiff's and Class members' purchase or lease of the defective Class Vehicles. As a direct and proximate result of Defendant's misconduct, Plaintiff and Class members have suffered and will continue to suffer actual damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

A. Certifying the Class under Federal Rule of Civil Procedure 23 as requested herein;

B. Appointing Plaintiff as Class Representative and undersigned counsel as Class Counsel;

C. Finding that Ford engaged in the unlawful conduct as alleged herein;

D. Awarding Plaintiff and the other Class members actual, compensatory, and consequential damages;

E. Awarding Plaintiff and the other Class members statutory damages;

F. Awarding Plaintiff and the other Class members declaratory and injunctive relief;

G. Awarding Plaintiff and the other Class members restitution and disgorgement;

H. Awarding Plaintiff and the other Class members exemplary damages, should the finder of fact determine that Ford acted with malice or oppression;

I. Awarding Plaintiff and the other Class members pre-judgment and post-judgment interest on all amounts awarded;

J. Awarding Plaintiff and the other Class members reasonable attorneys' fees, costs, and expenses; and

K. Granting such other relief as the Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiff, individually and on behalf of all others similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on all claims so triable.

Dated:  November 3, 2022                Respectfully submitted,

*/s/ Tina Wolfson*
TINA WOLFSON (SBN 174806)
twolfson@ahdootwolfson.com
ROBERT R. AHDOOT (SBN 172098)
rahdoot@ahdootwolfson.com
CHRISTOPHER STINER (SBN 276033)
cstiner@ahdootwolfson.com
DEBORAH DE VILLA (SBN 312564)
ddevilla@ahdootwolfson.com
**AHDOOT & WOLFSON, P.C.**
2600 W. Olive Avenue, Suite 500
Burbank, California 91505-4521
Telephone: (310) 474-9111
Facsimile:  (310) 474-8585

*Attorneys for Plaintiff and the Putative Classes*